Argued April 25, affirmed May 19, 1975

IN THE MATTER OF AN APPLICATION FOR A WRIT OF
HABEAS CORPUS

YOST, *Respondent, v.* PHILLIPS ET UX (No. 74-4084),
*Appellants.*

535 P2d 94

*Larry A. Brown,* Eugene, argued the cause for appellants. With him on the brief was Flinn, Lake & Brown, Eugene.

*Robert Dugdale,* Eugene, argued the cause for respondent. On the brief were Sahlstrom, Lombard, Starr & Vinson and David A. Vinson, Eugene.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

This is a habeas corpus proceeding brought by plaintiff-mother of a three-year-old girl against her parents. The trial court found for plaintiff. Defendants appeal on the grounds that it would be in the best interests of the child that they retain custody. We affirm.

Approximately one month before the birth of the child in question, plaintiff married the father and they commenced residing with defendants. Plaintiff had previously borne another daughter by the same father prior to her marriage. Soon after the birth of the second child the father departed. Plaintiff, with her two daughters, remained at her parents' residence for approximately four months.

Plaintiff then requested that her parents care for the second child and she departed their home with her older daughter and claims to have visited the younger child in question "As often as I could" (approximately weekly). Plaintiff offered financial assistance which defendants refused. Defendant (Mr. Phillips) told plaintiff she would not need to contribute anything and defendants would take care of the child's expenses.

Plaintiff married her present husband, Joe Yost,

on April 13, 1974. He testified that he had affection for the child and desired to adopt her.

It was established that plaintiff had been arrested for driving under the infuence of alcohol and eluding a police officer in January, 1974. The record also shows that plaintiff had various incidents in her background which were more in the nature of misfortunes than wrongdoing.

Clearly, defendants are stable and in a position to properly care for the child. As grandparents they have justifiable concern. Mr. Yost at the time of the hearing was employed as a truck driver and maintenance man for a demolition company with take-home pay of approximately $200 per week. His work requires frequent moves. At the time of the hearing, the couple had moved approximately once each month since they were married.

Plaintiff testifed that at the time she left the child with defendants she had no husband residing with her and was in need of help to rear the two infants who were less than one year apart in age. Plaintiff commenced efforts to take the child back promptly after her marriage to Yost. At that time, the child had been with defendants about two years.

The trial court issued a writ of habeas corpus in the usual form. At the trial, the court indicated that the child would be better off in the defendants' custody but ruled in favor of the plaintiff because defendants "failed to prove" that plaintiff was "unfit." The court held that in the absence of such a showing, plaintiff, as the mother, was entitled to the custody of the child.

■ In determining custody in a habeas corpus proceeding, the decisions of our Supreme Court recognize two doctrines: (1) *parental rights, Denessen et ux. v. Taylor,* 198 Or 347, 349, 352, 255 P2d 148 (1953); *Armstrong v. Vancil,* 169 Or 320, 128 P2d 951 (1942);

*Ex Parte Barnes. Barnes v. Long,* 54 Or 548, 550, 104 P 296 (1909); and (2) *the best interests of the child, Parker v. Kotterman,* 208 Or 680, 302 P2d 717 (1956); *Quinn v. Hanks,* 192 Or 254, 233 P2d 767 (1951); and *Bryant v. Dukehart,* 106 Or 359, 372-73, 210 P 454 (1923).

■ Our review is *de novo* on the record: *Quinn* and *Armstrong.*

In *Denessen,* the mother of the child executed and delivered a written document to her parents wherein she purported to give up all rights and custody in the child to the grandmother. Two years later, the mother of the child began to write to the maternal grandmother concerning the child, sometimes requesting that the child be sent to her. Such writing continued over the next five years. Finally, seven years after the child and the document were delivered to the grandmother, the *father* of the child brought a habeas corpus proceeding for custody. The court decided in favor of the father saying, *inter alia:*

"* * * The mother and father were the natural custodians of the child, and when they proved that the child was born in wedlock a prima facie case was made out entitling them to the custody of the child. * * *" 198 Or 349.

In *Ex Parte Barnes,* the child had been awarded to the mother pursuant to a decree of divorce. Almost two years after the parents of the child separated, the wife died at the home of her parents. The father of the child brought a habeas corpus proceeding against the child's maternal grandmother. The Supreme Court reversed the trial court and held for the father, saying:

"* * * [T]he law recognizes the father, the mother being dead, as the rightful custodian of his child, as against the claim of all persons. Of course, the court in the interest of the child may

take it from the parents and make other provisions for it, but there must be some good cause for so doing. No doubt the defendant would give the child a good home and the best of care, and is very much attached to it, but as against the father she has no legal claim upon it. * * *" 54 Or at 550.

In *Armstrong,* the Supreme Court held that unless the applicant is unfit, the court cannot refuse a habeas corpus application by the party legally entitled to the custody.

However, in *Parker,* the mother of the child brought a habeas corpus proceeding against her parents. Reversing the court below, the Supreme Court held for the grandparents, and observed:

"Taken in its entirety, the record presents a picture of maternal neglect and moral indifference especially shocking when measured by all accepted standards of decency. * * *" 208 Or at 681.

The court then quoted from *Bryant* as follows:

"* * * 'But, the right of the parent is not a right of property in the child nor an absolute vested right to his custody.' * * *" 208 Or at 682.

In holding for the grandparents, the court also gave consideration to the fact that the mother presented no evidence of fitness or reform of her past behavior.

■ Our review of the foregoing decisions indicates that the doctrine of parental rights is controlling unless there is suffcient competent evidence of parental unfitness to warrant holding otherwise. If future conditions clearly detrimental to the child's best interests arise, there are statutory procedures available for court wardship (ORS 419.507) or termination of parental rights (ORS 419.523).

Affirmed.